NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-565

BENJAMIN PIERCE

vs.

DEPARTMENT OF CHILDREN AND FAMILIES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After an investigation under G. L. c. 119, § 51B (51B investigation), the Department of Children and Families (department) supported a report under G. L. c. 119, § 51A (51A report), that Benjamin Pierce neglected a child in his care. Pierce requested a fair hearing, at the conclusion of which a hearing officer affirmed the department's decision to support the allegation of neglect.  Pierce then sought judicial review of the hearing officer's decision under G. L. c. 30A, § 14.  On the parties' cross-motions for judgment on the pleadings, a Superior Court judge allowed the department's motion, and Pierce appeals.  We affirm.

Background.  We summarize the hearing officer's findings of fact.  On April 26, 2023, the department received a 51A report alleging that Pierce, a teacher, neglected a seven-year-old student (child).  According to the 51A report, a second teacher was in the school gymnasium and saw the child sitting on the floor with a ball next to him.  Another student (student L) told the second teacher that Pierce threw the ball at the child's face because Pierce was angry that the child had hurt a third student (student S).  As stated in the 51A report, an internal investigation by the school had revealed that the child, running to get a ball, elbowed student S on accident; Pierce then told the child to sit out and threw the ball at him out of anger, hitting his face.  The child was not injured.

During the 51B investigation, a department response worker interviewed the child, student L, student S, the second teacher, and Pierce.  The three children, interviewed separately, told the same story:  the incident between the child and student S was accidental, but Pierce became angry, told the child to sit against the wall, and threw the ball at him, striking him on the side of his face.  The child had earlier described the incident in the same way to his mother.

The second teacher told the response worker that she did not see what happened but heard the ball hitting something or someone.  Almost immediately, student L came to her and said

2

that Pierce had hit the child in the face with the ball.  The child and student S told the second teacher the same story.  The response worker viewed the ball, which was "slightly smaller than a kickball" and made of "firm foam with a thin plastic outer layer referred to as 'gator skin.'"

Pierce told the response worker that he was frustrated when the child hit student S, but he calmed down within a minute or two.  According to Pierce, he then asked the child to rejoin the game and tossed the ball to him.  The child missed the ball, which bounced off the wall and brushed the side of his face.  Pierce denied hitting the child intentionally.

At the fair hearing, the response worker testified about the results of the 51B investigation, consistently with the facts set out above.  Pierce also testified consistently with what he told the response worker during the 51B investigation.  Based on all the evidence before her, which included the 51A report and the 51B investigation report, the hearing officer affirmed the department's decision to support the allegation of neglect, concluding that the evidence was sufficient to establish reasonable cause to believe that the neglect occurred.

Discussion.  We review a final agency decision to determine whether it is supported by substantial evidence, meaning "such evidence as a reasonable mind might accept as adequate to support a conclusion."  B.K. v. Department of Children &

3

Families, 79 Mass. App. Ct. 777, 780 (2011), quoting G. L. c. 30A, § 1 (6). Furthermore, in an appeal involving a decision by the department to support an allegation of abuse or neglect, we must also consider the low evidentiary threshold that applies at the administrative level. In particular, to support such an allegation, there need only be "reasonable cause to believe that an incident (reported or discovered during the investigation) of abuse or neglect by a caretaker did occur" (emphasis omitted). Lindsay v. Department of Social Servs., 439 Mass. 789, 797 (2003), quoting 110 Code Mass. Regs. § 4.32(2). At the fair hearing, the hearing officer must then determine "whether, based on all information then available (which may take into consideration information not considered by the investigator during the original investigation), there was -- and still is -- 'reasonable cause to believe' that the child was abused or neglected." Lindsay, supra at 798. The inquiry on judicial review thus becomes whether there was "'substantial evidence' supporting the conclusion that there was 'reasonable cause to believe'" that the plaintiff committed abuse or neglect. Id.

Here, substantial evidence supported the hearing officer's decision that Pierce neglected the child by failing to provide him with minimally adequate care. The hearing officer expressly found the child's statements to be reliable, observing that "[h]e gave a consistent account of what occurred to multiple

4

people."  The hearing officer further observed that the child's statements were corroborated by others, including two of his classmates, and that none of the children had any motive to lie. Based on the children's accounts, the hearing officer permissibly found that Pierce hit the child with the ball intentionally, and not accidentally as he claimed.  See G.R. v. Department of Developmental Servs., 84 Mass. App. Ct. 791, 794 (2014) (reviewing court must defer to agency's subsidiary factual findings, credibility determinations, and inferences drawn from the evidence).

The hearing officer's factual findings were in turn sufficient to support a determination of neglect as a matter of law.  The department's regulations define "neglect" to include a "failure by a caretaker,[1] either deliberately or through negligence or inability, to take those actions necessary to provide a child with minimally adequate . . . emotional stability and growth, or other essential care."  110 Code Mass. Regs. § 2.00.  It was reasonable for the hearing officer to conclude that Pierce deprived the child of minimally adequate emotional stability and growth by throwing the ball at his face out of anger, causing the child to become upset and student L to seek assistance from the second teacher.  See Carey v.

---

[1] Pierce does not dispute that he qualifies as a "caretaker."

Commissioner of Correction, 479 Mass. 367, 371 (2018) (court must defer to agency's reasonable construction of regulation); B.K., 79 Mass. App. Ct. at 781-782 (substantial evidence supported finding that father failed to provide child with minimally adequate emotional stability and growth, where father violated court order by visiting child's school and sending her letter and gifts to gain advantage in custody proceedings); John D. v. Department of Social Servs., 51 Mass. App. Ct. 125, 133 (2001) (evidence that father allowed children to witness domestic violence supported finding that he failed to provide them with minimally adequate emotional stability and growth). Although Pierce points out that the child was not injured, the department need not wait until actual injury has occurred to support an allegation of neglect. See Lindsay, 439 Mass. at 797.

We are unpersuaded by Pierce's contention that the hearing officer's decision must be set aside because she did not make express credibility determinations in the face of conflicting testimony from the response worker and Pierce. Unlike in the cases that Pierce cites, the response worker was not a percipient witness; she did not testify about what occurred in the gymnasium (nor could she because she was not there), but rather about what she learned during the 51B investigation. Absent any indication that the response worker fabricated the

6

results of her investigation, her credibility was not at issue. Thus, this is not a case where an express analysis of her credibility was required. Cf. Herridge v. Board of Registration in Med., 420 Mass. 154, 163-165 (1995) (express analysis of credibility required where physician and patient gave conflicting testimony about duration of physician-patient relationship and portions of patient's testimony gave rise to inference of fabrication).

We are further unpersuaded by Pierce's contention that the response worker's credibility was at issue because her testimony showed that she was biased. In so arguing, Pierce points to the response worker's failure to ask certain follow-up questions when interviewing witnesses and quarrels with her word choices, arguing, for instance, that she embellished her report by stating that the children gave "the exact same account" of the incident while admitting later at the hearing that the children's accounts were not "the exact same word-for-word statements." Suffice it to say that we have reviewed each of Pierce's assertions and conclude that none credibly demonstrates that the response worker was biased. The response worker consistently testified at the hearing that, despite some imprecision in word choices, the substance of her report was accurate. The hearing examiner implicitly credited that

testimony, as was within her province to do.  See G.R., 84 Mass. App. Ct. at 794.

Pierce further claims that the hearing officer erred by finding that he admitted to throwing the ball "at" the child, when he actually testified that he threw the ball "to" the child.  But Pierce does not explain how this word choice constitutes reversible error where elsewhere in her decision the hearing officer acknowledged that Pierce "denied he intentionally hit the child with the ball" and instead claimed that "he tried to get the child back in the game and 'tossed' the ball to the child and it bounced off the wall and skim[med] the child's head."  Pierce has therefore failed to demonstrate that his substantial rights were prejudiced.  See G. L. c. 30A, 14 (7).

Finally, Pierce challenges certain aspects of the judge's decision, claiming among other things that the judge misstated the facts.  But on appeal in a case brought under G. L. c. 30A, § 14, our review is of the agency's decision, and we owe no deference to the conclusions of the judge.  See Commercial Wharf E. Condominium Ass'n v. Department of Envtl. Protection, 99 Mass. App. Ct. 834, 840 (2021).  Thus, any errors in the judge's decision are immaterial.

To the extent we have not specifically addressed any of Pierce's arguments, we see nothing in them that warrants overturning the judgment.

<u>Judgment affirmed</u>.

By the Court (Shin, Walsh & Allen, JJ.[2]),

Clerk

Entered:  March 30, 2026.

---

[2] The panelists are listed in order of seniority.